IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

**HUNTINGTON DIVISION**

TERRIE L. RUNION, individually and
as Administratrix of the Estate of
Ashleigh Runion,

       Plaintiff,

v.           CIVIL   ACTION   NO.   3:12-2538

MINNESOTA LIFE INSURANCE
COMPANY,

       Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are the parties' cross-motions for summary judgment on Count One of the complaint.   ECF Nos. 16 (Defendant's motion) and 18 (Plaintiff's motion).   Plaintiff, the administratrix of the estate of her deceased daughter, Ashleigh Runion ("Ms. Runion"), seeks a declaratory judgment that accidental death benefits are payable pursuant to a life insurance policy issued by Defendant Minnesota Life Insurance Company.   Defendant argues that the terms of its policy specifically exclude accidental death coverage for Ms. Runion's death and asks the Court to enter judgment in its favor.   For the reasons stated below, the Court **GRANTS** Defendant's motion for summary judgment and **DENIES** Plaintiff's motion.

## I.  BACKGROUND

This case arises from an automobile collision that tragically resulted in the death of Ashleigh Runion and her 10-month-old son.   The relevant facts surrounding the collision are

uncontested.[1]   On the morning of July 4, 2010, Ms. Runion was operating a motor vehicle traveling southbound on U.S. Route 35 in Putnam County, West Virginia.   Her son was in the front passenger seat without a child safety seat.   Neither was wearing a seat belt.   Witnesses observed Ms. Runion's vehicle cross the center line into the northbound lane, going against the flow of traffic.   One northbound vehicle ran off the road to avoid a collision with Ms. Runion's vehicle.   Ms. Runion's vehicle continued driving the wrong way in the northbound lane, towards an oncoming tractor trailer.   In an apparent attempt to avoid collision, the tractor trailer began to move into the southbound lane.   Ms. Runion's vehicle, however, then moved back to the proper lane and collided with the tractor trailer.   She and her son were pronounced dead at the scene.

The Office of the Medical Examiner performed a post-mortem examination of Ms. Runion's body to determine the cause of death.   Ex. 3, Def.'s Mot. Summ. J., ECF No. 21-5.   The examination included a blood and urine toxicology analysis.   Ex. 7, Pl.'s Mot. Summ J., ECF No. 18-7.   The medical examiner found multiple injuries due to the motor vehicle collision, which included bone fractures, lacerations, and a "closed chest injury."   Ex. 3, ECF No. 21-5, at 6.   The toxicology report states that Ms. Runion's blood contained two controlled substances: oxycodone in a concentration of 0.27 mg/L and oxymorphone in a concentration of 0.02 mg/L.   ECF No. 18-7.   The report identified a "therapeutic" concentration of oxycodone to be within the range 0.01 mg/L to 0.10 mg/L, and a level in excess of .10 mg/L is considered "toxic."   *Id.*   The report noted that "[t]he narcotic analgesic oxycodone was present in the blood at a concentration that can cause toxicity in those who do not have tolerance to opiate medications."   *Id.*   The medical examiner's final opinion as to cause of death was that Ms. Runion "died as the result of multiple

---

[1] These facts are taken from the Crash Reconstructionist Report, Ex. 2, Def.'s Mot. Summ J., ECF No. 21-3.

2

injuries received as the unrestrained, oxycodone impaired operator of a motor vehicle involved in a two vehicle crash."   Ex. 3, ECF No. 21-5, at 6.

As an employee of the Putnam County Schools, Ms. Runion was insured by a group term life insurance policy issued by Defendant, Minnesota Life Insurance Company.   Ex. 1, Def.'s Mot. Summ. J., ECF No. 16-1.   Upon Ms. Runion's death, Defendant paid Plaintiff's claim for basic and optional term life benefits, in the amount of $110,000.   Plaintiff also submitted a claim for accidental death benefits, which are provided under an Accidental Death and Dismemberment Policy Rider.   On July 22, 2011, Defendant denied this claim.   Ex. 6, Pl.'s Mot. Summ. J., ECF No. 18-6.   Plaintiff thereafter filed this action, alleging that Defendant wrongfully denied Plaintiff's claim for accidental death benefits.   Count One of the complaint seeks a declaratory judgment that the life insurance policy provides accidental death coverage for Ms. Runion's death. Compl. ¶¶ 11-12.   In Count Two, Plaintiff asserts a claim that Defendant violated the West Virginia Unfair Trade Practices Act, W. Va. Code § 33-11-4.   Compl. ¶¶ 13-17.   The parties have now filed cross-motions for summary judgment on Count One of the complaint.   With this background in mind, the Court now turns to the language of the policy, the parties' arguments, and the applicable legal standards.

## II.    ANALYSIS

### A.    Legal Standards

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a).   In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter[.]"   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).   Instead, the Court will draw any permissible inference from the underlying facts in

the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]"  *Anderson*, 477 U.S. at 256.   Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).   The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position.  *Anderson*, 477 U.S. at 252.

The dispositive issue here is whether Ms. Runion's death qualifies as an "accidental death" under the terms of her life insurance policy, for which benefits are payable.  It is a contract dispute.   In a West Virginia action for declaratory judgment to determine the scope of coverage under a particular insurance policy, the plaintiff bears the burden of establishing a prima facie case that the claim falls within the scope of coverage.  *Camden-Clark Mem'l Hosp. Ass'n v. St. Paul Fire & Marine Ins. Co.*, 682 S.E.2d 566, 574 (W. Va. 2009).   Once a prima facie case has been established, the burden shifts to the insurer to demonstrate that an exclusion applies.  *Id.* (citing Syl. Pt. 7, *Nat'l Mut. Ins. Co. v. McMahon & Sons, Inc.,* 356 S.E.2d 488 (W. Va. 1987), *modified on other grounds by, Potesta v. U.S. Fid. & Guar. Co.,* 504 S.E.2d 135 (W. Va. 1998)).   Where "the policy language involved is exclusionary, it will be strictly construed against the insurer in order that the purpose of providing indemnity not be defeated."  *Id.* (quoting Syl. Pt. 5, *McMahon,* 356 S.E.2d 488).   Although insurance contracts are construed liberally in favor of the insured, Syl., *Thompson v. State Automobile Mut. Ins. Co.*, 11 S.E.2d 849 (W. Va. 1940), "[w]here the

4

provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." Syl., *Keffer v. Prudential Ins. Co. of Am.*, 172 S.E.2d 714 (W. Va. 1970).

**B.     The Insurance Policy**

The accidental death provision of the life insurance policy "provides a benefit for an insured employee's or an insured dependent's accidental death . . . which occurs as a result of an accidental injury."   Policy, Ex. 1, Def.'s Mot. Summ J., ECF No. 16-1.   The policy defines "accidental death by accidental injury" to mean "that the insured's death . . . results, directly and independently of all other causes, from an accidental injury which is unintended, unexpected, and unforeseen."   *Id.*   The policy also contains the following coverage exclusions:

> In no event will we pay the accidental death . . . benefit where the insured's death . . . is caused directly or indirectly by, resulting from, or where there is a contribution from, any of the following:
>
> * * *
>
> (2)   the insured's participation in or attempt to commit a felony; or
>
> * * *
>
> (4)   the abuse of drugs, or the use of poisons, gases or fumes, voluntarily taken, administered, absorbed, inhaled, ingested or injected, except as administered by a licensed medical professional[.]

ECF No. 16-1.   Defendant argues that Plaintiff is not entitled to accidental death benefits under the policy for three reasons.   First, a fatal motor vehicle collision while driving under the influence does not qualify as an "accidental injury" under the terms of the policy because it is not unexpected and unforeseen.   Denial Ltr., ECF No. 21-5.   Second, policy exclusion number two applies because Ms. Runion's death resulted from the commission of a felony—in this case, driving under the influence, causing death.   *Id.*   Third, policy exclusion number four applies

5

because Ms. Runion's death resulted from her abuse of drugs.  *Id.*   Because the Court finds that the policy exclusions bar Plaintiff's claim, a determination whether Ms. Runion's collision was an unforeseeable accident is unnecessary.[2]

### 1.    Felony exclusion

Policy exclusion number two denies coverage where the insured's death is caused directly or indirectly by, resulting from, or where there is a contribution from, the insured's participation in a felony.   The plain language of this exclusion is clear and unambiguous.   It will therefore be interpreted according to its plain meaning.   *Cf. Minn. Life Ins. Co. v. Scott*, 330 F. Supp. 2d 661, 666 (E.D. Va. 2004) (finding no ambiguity in nearly identical policy language).   Defendant argues that this exclusion operates to bar Plaintiff's claim because Ms. Runion died as a result of her participation in a felony.

Under West Virginia law, a person who drives under the influence of any controlled substance or other drug and commits an act that causes the death of any person is guilty of a felony. W. Va. Code § 17C-5-2.   Section 17C-5-2 states in relevant part:

> (a) Any person who:
> (1) Drives a vehicle in this state while he or she:
> (B) Is under the influence of any controlled substance; [or]
> (C) Is under the influence of any other drug;
> and
> (2) While driving does any act forbidden by law or fails to perform any duty imposed by law in the driving of the vehicle, which act or failure proximately causes the death of any person within one year next following the act or failure; and
> (3) Commits the act or failure in reckless disregard of the safety of others and when the influence of alcohol, controlled substances or drugs is shown to be a contributing cause to the death, is guilty of a felony.

---

[2] In its summary judgment briefing, Defendant focused almost exclusively on the application of the exclusions.   Plaintiff, on the other hand, dedicated a great majority of her cross-motion for summary judgment to the argument that Ms. Runion's death was indeed an accidental death within the policy definition.   Assuming, *arguendo*, that Ms. Runion's death was the result of an "accidental injury" under the policy's definition, Plaintiff must still demonstrate that Defendant has not met its burden in showing that the policy exclusions apply.

*Id.*   Plaintiff claims that Defendant cannot prove the first element of this crime, that Ms. Runion was driving "under the influence" at the time of the collision.   Plaintiff argues that the toxicologist's statement that the level of oxycodone in her blood was at a concentration "that *can* cause toxicity in those *who do not have tolerance* to opiate medications" is inconclusive and does not prove that she was impaired.   *See* Ex. 7, Pl.'s Mot. Summ. J., ECF No. 18-7 (emphasis added). According to Plaintiff, Ms. Runion had developed a tolerance to the substance and therefore the level found in her blood was not toxic.   Despite the complete lack of evidence suggesting that the collision occurred as a result of anything but Ms. Runion's reckless operation of her motor vehicle, Plaintiff argues that Defendant must pay accidental death benefits because it cannot prove that the amount of drugs in Ms. Runion's system contributed to her reckless driving, which resulted in her death.

The Court disagrees with Plaintiff and finds that there is sufficient undisputed evidence that Ms. Runion was driving under the influence of a controlled substance and that this caused both her and her son's death.   Unlike DUI offenses involving alcohol intoxication, the West Virginia Legislature has not established a discrete blood content threshold over which it is legally concluded that a driver is under the influence.   That does not mean, however, that the toxicology results have no probative value.   Rather, they must be considered equally with the other evidence. In this case, Defendant has produced sufficient evidence that Ms. Runion was indeed driving under the influence of a controlled substance.   First, there is the toxicology report showing that Ms. Runion had oxycodone levels of 0.27 mg/L, nearly three times what is considered to be a therapeutic dose (0.01-0.10 mg/L).   Plaintiff does not contest the accuracy of these measurements.   Second, after performing an autopsy, the medical examiner concluded that Ms. Runion "died as the result of multiple injuries received as the unrestrained, oxycodone impaired

operator of a motor vehicle." Ex. 3, ECF No. 21-5. While Plaintiff disputes the medical examiner's description of Ms. Runion as "oxycodone intoxicated," Plaintiff does not challenge the medical examiner's factual findings, nor does she offer evidence of any other biological explanation for Ms. Runion's wrongful driving that the medical examiner may have neglected, such as a stroke or other sudden physical impairment. Plaintiff does not dispute the testimony of several witnesses that Ms. Runion was driving in the wrong lane against the flow of traffic for a time long enough to force two vehicles to pull off the road or into a different lane to avoid her. Thus, there is no evidence that Ms. Runion was driving in the wrong lane very briefly due to some momentary distraction wholly unrelated to the presence of drugs in her system.

Plaintiff maintains that the toxicologist's opinion of Ms. Runion's level of impairment is not probative because the toxicologist used the "inconclusive" observation that the concentration of oxycodone present in Ms. Runion's blood "*can* cause toxity in those *who do not have a tolerance* of opiate medications." Plaintiff cites the Fourth Circuit's unpublished opinion in *Moore v. Unum Provident Corp.*, 116 Fed. App'x 416 (4th Cir. 2004) as support for the contention that such a statement is "too indefinite to support a finding that [the insured's] death was a result of [drug] use." 116 Fed. App'x at 421. *Moore*, however, is inapposite. In that case, the insured, Moore, entered the home of his girlfriend uninvited, while carrying a pistol. Moore was quickly engaged in a physical altercation with the girlfriend's houseguest, who eventually gained possession of the pistol and beat Moore with it. Moore died from cardiac arrhythmia due to the stress of the beating. A toxicology report indicated that the insured had a quantity of methamphetamine in his system at the time of his death. A medical expert stated that "chronic cocaine and/or methamphetamine abuse *could* contribute to a cardiomyopathy," and the quantity of the drug in his system could be expected to exacerbate any pre-existing cardiovascular disease.

8

*Id.* at 420.   The defendant insurance company denied accidental death benefits, arguing that a policy provision, similar to the one at issue in this case, excluded coverage for "injury caused by or contributed to directly or indirectly by: the Insured being under the influence of a 'controlled substance.'"   *Id.* at 418.   The Fourth Circuit affirmed the district court's ruling that there was insufficient evidence to trigger the controlled substances exclusion.   The court noted first that there was no evidence that the insured was a chronic user, and second, the expert's opinion that the methamphetamine levels could have exacerbated any existing heart condition was too indefinite to support a finding that his death was a result of methamphetamine use.   *Id.* at 421.

Plaintiff in this case does not dispute the toxicologist's conclusion that the level of oxycodone present in Ms. Runion's blood at the time of the crash is capable of causing toxicity in those who do not have opioid tolerance.   She claims instead that Ms. Runion had a history of narcotic addiction, and the Court should assume that the level of oxycodone in Ms. Runion's blood was therefore not toxic to her.   The evidence in the record does establish that Ms. Runion had struggled with narcotic addiction and participated unsuccessfully in an addiction treatment program approximately six months before her death.   There is no evidence, however, from a medical expert or otherwise, that Ms. Runion had developed an opioid tolerance, or what the level of any tolerance may be.   Meanwhile, Defendant has produced evidence showing that the amount of oxycodone in Ms. Runion's blood at the time of her death was at a level nearly three times that of a therapeutic dose.   Defendant is not bound by the high burden of proof required in criminal proceedings, because this is not a criminal prosecution.   *See Kay-Woods v. Minn. Life Ins. Co.*, 622 F. Supp. 2d 704, 708-09 (S.D. Ill. 2009).   Because the undisputed evidence indicates that Ms. Runion was under the influence of controlled substances at the time of the collision, Defendant has satisfied its burden on this element.

The evidence in this case, unlike that in *Moore*, establishes the clear connection between Ms. Runion's ingestion of drugs and her death.   In *Moore*, there was no evidence that the insured had a pre-existing cardiovascular condition.   Moreover, the defendant insurance company did not argue that Moore's ingestion of methamphetamine contributed to his showing up uninvited at his girlfriend's residence with a weapon and was thus an indirect cause of his death in that way.   In contrast, this Defendant has produced evidence that Ms. Runion's ingestion of a high level of oxycodone did impair her driving.   Unlike *Moore*, where there was an insufficient connection between the deceased's ingestion of methamphetamine, the physical assault, and subsequent cardiac arrhythmia, the connection here is much more direct.   After consuming a high quantity of controlled substances, Ms. Runion operated a motor vehicle in a reckless manner, with her unrestrained 10-month-old son in the front passenger seat, and caused a collision with a tractor trailer, which resulted in their deaths.

Plaintiff does not argue, and there is no evidence, that there was any intervening cause or other contributing factors to the collision and deaths.   Plaintiff may not defeat Defendant's motion for summary judgment—or prevail on her own—without presenting evidence to support her alternative causation theory.   *See Kay-Woods v. Minn. Life Ins. Co.*, 622 F. Supp. 2d 704, 708 (S.D. Ill. 2009) (granting summary judgment for life insurance company that denied accidental life insurance benefits based on decedent's participation in a DUI-related offense, because plaintiff produced no evidence whatsoever to support her alternative theories of causation—for example, that a deer leaped in front of his car, or that he died of natural causes).   Here, Plaintiff has not even presented a plausible alternative theory of causation, let alone evidence to support it. Accordingly, the Court concludes that there is no evidence from which a jury could find that Ms. Runion's death was not caused by her driving under the influence.   *See Morgan v. Allianz Life Ins.*

10

*Co. of N. Am.*, 976 F. Supp. 409, 414 (S.D. W. Va. 1997), *aff'd,* 151 F.3d 1029 (4th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)) ("More fundamentally, however, the Beneficiary cannot demonstrate a triable issue and defeat a motion for summary judgment merely by resting on allegations and unsupported assertions.").

Defendant has demonstrated evidence sufficient to satisfy the first two elements of the felony offense: Ms. Runion was under the influence of a controlled substance, and she committed acts forbidden by law and failed to perform duties imposed by law in the driving of her vehicle. For example, she operated her vehicle left of center, in violation of W. Va. Code § 17C-7-5, and failed to place her infant son in a proper child restraint, in violation of W. Va. Code § 17C-15-46. Plaintiff does not contest that Ms. Runion violated these traffic laws and was at fault in the collision.   These acts proximately caused the death of Ms. Runion's son.

The final element of the felony offense is that the act or failure was committed "in reckless disregard of the safety of others."   The West Virginia Supreme Court of Appeals has described this mens rea as "more than negligence" and "characterized by negligence so gross, wanton, and culpable as to show a reckless disregard for human life."   Syl. Pts. 3 & 4, *West Virginia v. Green*, 647 S.E.2d 736 (W. Va. 2007).   Generally, "reckless disregard" may not be established based solely on a technical violation of a statute.   *Id.* at 746.   The court recognized, however, that "there are certain situations in which the act which is in violation of a traffic statute may form the basis for a [prosecution, but] such situations would be limited to those in which the act constituting the violation *also* evidences negligence so gross, wanton, and culpable as to show a reckless disregard for human life."   *Id.*   The uncontested evidence in this case satisfies this third element.   Ms. Runion consciously chose to place her 10-month-old child in the front passenger seat of her vehicle—without a child safety seat or a restraint of any kind.   She did so despite the fact that a

child safety seat was already available and properly installed in the rear seat of her vehicle.   Crash Reconstructionist Report, Ex.2(A), ECF No. 21-3, at 9.   Knowing that her child was unrestrained in the front seat, Ms. Runion then decided to operate the vehicle, having ingested both oxymorphone and nearly three times the therapeutic dose of oxycodone.   While operating the vehicle, Ms. Runion crossed the center line and drove against the flow of traffic, even after one car swerved off the road to avoid colliding with her vehicle.   All these actions clearly demonstrate that Ms. Runion possessed a reckless disregard for the safety of her son, others on the road, and herself.   Tragically, Ms. Runion's reckless disregard for the safety of others resulted in her own death and the death of her son.

The Court concludes that Defendant has met its burden of proving that Ms. Runion's loss falls within the second policy exclusion.   Because Ms. Runion's death was caused or resulted from her participation in the felony offense of driving under the influence resulting in death, the second exclusion of the accidental death policy precludes Plaintiff's claim.   Although this finding is sufficient to defeat Plaintiff's claim, the Court will nonetheless address the application of the drug abuse exclusion as well.

### 2.   Drug abuse exclusion

The policy's fourth exclusion states that the accidental death benefit will not be paid where the insured's death "is caused directly or indirectly by, resulting from or where there is a contribution from . . . the abuse of drugs, . . . voluntarily taken, administered, absorbed, inhaled, ingested or injected, except as administered by a licensed medical professional."   Like the previous exclusion, the language here is clear and unambiguous.[3]

---

[3] The Court rejects Plaintiff's argument that this exclusion should be interpreted to apply only where the insured dies of a drug overdose.   This interpretation ignores the policy's plain language, which requires that the drug abuse causes—directly or indirectly, *or* results from, *or*

Defendant has produced sufficient evidence to demonstrate that Ms. Runion was abusing drugs at the time of her death. The parties agree that oxycodone is a Schedule II controlled substance. Ms. Runion's pharmacy records indicate that in the approximately two years prior to her death, she received only one prescription for a three-day supply of oxycodone, which was filled on August 15, 2009, after the birth of her son. ECF No. 18-11. Ms. Runion received no additional oxycodone prescriptions afterwards.[4] The records also show that in that same time period, Ms. Runion never received a prescription for oxymorphone. Therefore, at the time of her death, Ms. Runion had ingested a high quantity of oxycodone and a quantity of oxymorphone, all without a valid prescription, and was thus abusing drugs.

Second, there is no evidence in the record that the drugs were not consumed voluntarily, or that the drugs were administered by a licensed medical professional. Ms. Runion had an unfortunate history of narcotic abuse. One doctor who had been treating Ms. Runion for narcotic addiction told her twice that he would no longer continue treatment due to Ms. Runion's breach of the treatment agreement, most recently six months before her death.[5] Ex. Nos. 7 & 8, ECF No. 21-5. In a statement provided to the sheriff's department investigator, one witness described

---

contributes to, the death. By the policy's clear terms, the exclusion applies even if the drug abuse contributed to the death; the drug abuse need not be the sole cause of death.

[4] Defendant mistakenly states that Ms. Runion was prescribed oxycodone three additional times after the birth of her son. The pharmacy records Defendant cites, however, indicate that those subsequent prescriptions were written for hydrocodone—not oxycodone. Ms. Runion filled prescriptions for hydrocodone three times after the birth of her son: on March 22, 2010, March 29, 2010, and May 6, 2010. Ex. 9, Def.'s Mot. Summ J., ECF No. 21-5. The toxicologist's report, however, stated that oxycodone—not hydrocodone—was present in Ms. Runion's blood at the time of her death. Even so, there were no current prescriptions for either oxycodone *or* hydrocodone in the month before the collision.

[5] The letters from Ms. Runion's physician state, "I have determined that I will no longer be able to treat you for your narcotic addiction due to breach of your buprenorphine agreement." Ex. Nos. 7 & 8, ECF No. 21-5. The "buprenorphine agreement" itself is not in the record and the Court will not speculate as to its substance.

observing "needle tracks" on Ms. Runion's arms and seeing her under the influence of drugs. Statement of Christy Lynn Frazier, Ex. 2, Def.'s Mot. Summ. J., ECF No. 21-4.  Plaintiff has produced not even a scintilla of evidence that a licensed medical professional administered oxycodone and oxymorphone to Ms. Runion on the morning of the accident or in the days prior. Pl.'s Resp. to Interrogatory No. 4, Ex. 6, Def.'s Mot. Summ. J., ECF No. 21-5.  As the Court observed above, mere speculation is insufficient to defeat a motion for summary judgment. Plaintiff must produce some evidence from which a jury could return a verdict in her favor.   The undisputed evidence in this case supports the conclusion that Ms. Runion voluntarily ingested the drugs and they were not administered by a licensed medical professional.

Finally, for the same reasons discussed *supra* regarding the felony exclusion, the Court concludes that Defendant has produced sufficient evidence establishing the causation element for this exclusion as well.   As the Court previously stated, the undisputed evidence establishes that: Ms. Runion had oxycodone blood levels nearly three times the therapeutic amount while operating a motor vehicle; she committed numerous traffic violations, including driving on the wrong side of the road; Ms. Runion's car collided with a tractor trailer that was switching lanes in an attempt to avoid her; and the collision resulted in Ms. Runion's death.   There is absolutely no evidence to indicate any other plausible cause of Ms. Runion's wrongful driving and the collision itself, besides Ms. Runion's impaired driving.

Therefore, Defendant has satisfied its burden of proving that the drug abuse exclusion also applies to deny Plaintiff's claim for accidental death benefits.

### III.    CONCLUSION

This is undoubtedly a tragic case, involving the loss of two young lives.   The life insurance policy at issue in this case, however, is clear and unambiguous.   For the reasons

14

discussed above, the Court concludes that Defendant's policy explicitly excludes from coverage accidental death benefits under the circumstances presented in this case.  Defendant's denial of accidental death benefits was not wrongful.  Accordingly, the Court **GRANTS** Defendant's motion for summary judgment on Count One of the complaint[6] and **DENIES** Plaintiff's motion for summary judgment.

Pursuant to the parties' request, the proceedings in this action were bifurcated such that discovery and dispositive motions were permitted first on Plaintiff's claim for declaratory judgment.  That claim now being resolved, the Court **DIRECTS** the parties to conduct another Rule 26(f) planning meeting regarding Plaintiff's remaining claim, and to submit the report of that meeting no later than **June 20, 2013**.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER:        June 6, 2013

ROBERT C. CHAMBERS, CHIEF JUDGE

---

[6] In its motion for summary judgment, Defendant also "suggest[ed]" that Plaintiff should be required to reimburse Defendant its costs and attorneys' fees as a result of this action.   The Court declines to follow this "suggestion" and instructs Defendant that any such request should be made by following the procedure set out in Rule 54(d) of the Federal Rules of Civil Procedure.